No.  13-17479

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

EDWARD ZIMBELMAN,
Appellant,

vs.

SOUTHERN NEVADA REGIONAL
HOUSING AUTHORITY and JOHN
HILL, In his official capacity as Executive
Director of the Southern Nevada Regional
Housing Authority,
Appellees.

_____

On Appeal from the U.S. District Court
for the District Of Nevada
Case No. 2:13-cv-02143
_____

## REPLY BRIEF OF APPELLANT
## PRELIMINARY INJUNCTION APPEAL

I. KRISTINE BERGSTROM, ESQ.
Nevada Bar No.10841
TERI VELA, ESQ.
Nevada Bar No. 12653
NEVADA LEGAL SERVICES, INC.
530 South 6th Street
Las Vegas, Nevada 89101
(702)386-0404/Fax (702) 388-1641
kbergstrom@nlslaw.net
Attorneys for Appellant, Edward Zimbelman

## **TABLE OF CONTENTS**

Table of Authorities ................................................................................ iii

Introduction ........................................................................................... 1

Argument ......................................................................................... 2-15

A.  Zimbelman Has A Private Right Of Action Against The Housing Authority Under 42 U.S.C. §1437d. ................................................. 2

B.  The Housing Authority Relies On 42 U.S.C. § 13662, And Thus Case Law Regarding Terminations Under This Statute And Any Regulations Implementing 42 U.S.C. §13362 Are Relevant To Zimbelman's Case. ...................................................... 6

C.  The Unclean Hands Doctrine Does Not Preclude Zimbelman From Claiming That The Housing Authority Waived Its Right to Terminate Him Under The Lease. ................................................. 11

D.  The Housing Authority's Claim That Zimbelman Will Not Suffer Irreparable Harm If Evicted Is Not Supported By The Facts Of The Case. .................................................................................... 13

E.  The Balance Of Equities Is In  Zimbelman's Favor Where The Housing Authority Can Point To No Evidence That It Will Suffer Harm If Zimbelman's Injunction Is Granted. .................................. 14

Conclusion ........................................................................................... 14

Certificate of Compliance ..................................................................... 15

Proof of Service ................................................................................... 15

## TABLE OF AUTHORITIES

CASES

Blessing v. Freestone, 520 U.S. 329 (1997) ....................................... 4, 5

Cain v. Allegheny Housing Authority, 986 A.2d 947 (Pa. Commw. Ct. 2009) ........................................................................................................ 10

Ellis v. Ritchie, 803 F.Supp. 1097(E.D.Va. 1992) ................................... 10

Evans v. Dean Witter Reynolds, Inc., 5 P.3d 1043 (Nev. 2000) ............. 12

Farley v. Philadelphia Housing Authority, 102 F.3d 697 (3d. Cir. 1996).... 6

Gonzaga Univ. v. Doe, 536 U.S. 273 (2002) ...................................... 4- 5

Hosp. Banks v. Sunrise, 102 P.3d 52 (Nev. 2004) ................................ 11

Las Vegas Fetish & Fantasy v. Ahern, 182 P.3d 764(Nev. 2008) ..... 11, 12

Locken v. Locken, 650 P.2d 803 (Nev. 1982) ....................................... 12

Loughran v. Loughran, 292 U.S. 216 (1934) ......................................... 13

Hous. Auth. of Hartford v. Ali Kenyatta Bros., No. HDSP-165671,

2013 Conn. Super. LEXIS 1327 (June 21, 2013) ............................... 8, 14

Matter of Bonsiero v. New York City Dept. of Hous. Preserv. and Dev.,

2012 N.Y. Misc. LEXIS 649 (N.Y.Sup. Ct. 2012) ........................... 7, 8, 11

Miller v. McCormick, 605 F.Supp.2d 296 (D.Me. 2009) ................. 7, 8, 10

Perkins-Bey v. Housing Authority of St, Louis County,

 2011 U.S. Dist. LEXIS 25438 (E.D.Mo. Mar 14, 2011) ................. 7, 8, 10

Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806

(1945) ................................................................................................. 13

Raich v. Gonzales., 500 F.3d 850 (9th Cir. 2007) ................................... 2

Saxton v. Housing Auth. of Tacoma, 1 F.3d 881 (9th Cir. 1993).............. 6

Stevenson v. Willis, 579 F. Supp. 2d 913 (N.D. Ohio 2008) .................... 6

Samuels v. Dist. Of Columbia, 770 F.2d 184 (D.C. Cir. 1985) ................ 6

Smith v. Marsh, 194 F.3d 1045 (9th Cir. 1999)......................................... 2

Tracy v. Capozzi, 642 P.2d 591 (Nev. 1982) ................................... 12- 13

Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418 (1987) ..................................................................................................3-4

## STATUTES

42 U.S.C. § 1437d............................................................................ 2, 4, 5

42 U.S.C. § 13662 ................................................................. 6, 7, 8, 9, 10

42 U.S.C. § 13663 ................................................................. 6, 7, 8, 9, 10

## REGULATIONS

24 C.F.R. § 960.204 .............................................................................8, 9

24 C.F.R. § 966.4(l) ................................................................................9

24 C.F.R. § 982.553 ...........................................................................7, 8

24 C.F.R. § 5.856.................................................................................8, 9


Screening and Eviction For Drug Abuse and Other Criminal Activity, 66 Fed.Reg 28,776 (May 24, 2001) .............................................................9

## OTHER AUTHORITIES

State Registered Lifetime Sex Offenders in Federally Assisted Housing, PIH 2012-28, H 2012-11 (June 11, 2012) ................................................9

Screening and Eviction for Drug Abuse and Other Criminal Activity - Final Rule  HUD NOTICE H 2002-12 (October 29, 2002)  .............................13

## INTRODUCTION

Appellant, Edward Zimbelman (hereinafter "Zimbelman") hereby files his reply to the answering brief of Appellees, the Southern Nevada Regional Housing Authority (hereinafter "Housing Authority") and John Hill, the Housing Authority's executive director. Reviewing this case *de novo*, the district court was wrong as a matter of law to deny the preliminary injunction. There is no legal basis to terminate his subsidy where Zimbleman disclosed his registrant status on his application for housing.

Zimbelman has a private right of action against the Housing Authority under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1437d. Moreover, this Court should not consider the Housing Authority's argument against Zimbelman's private right of action because the Housing Authority cannot raise this new claim for the first time on appeal.

The Housing Authority is incorrect where it claims that the "unclean hands" doctrine prevents Zimbelman from raising a waiver claim against the Housing Authority. Under Nevada contract law, only egregious conduct that shows intent to deceive or harm another party will trigger an unclean hands defense. The Housing Authority cannot show that Zimbelman acted with the intent to deceive when he signed his lease, where Zimbelman was

1

honest regarding his registrant status when he filled out his housing application.   Nevada contract law and principles of equity prevent the Housing Authority from proceeding with this termination.

Finally, there is no basis to conclude that the Housing Authority will suffer any harm or that Zimbelman can afford a dwelling in Las Vegas.  The balance of equities and public interest in this case tips sharply in favor of Zimbelman.

## **ARGUMENT**

### A.    Zimbelman Has A Private Right Of Action Against The Housing Authority Under 42 U.S.C. §1437d.

In its Answer, the Housing Authority argues that Zimbelman "has not established a private right of action under the United States Housing Act." (AB at 9).  The Housing Authority did not raise this argument in the district court and generally this court does not consider arguments that are raised for the first time on appeal.  *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999)*.*  An *e*xception to this general rule may occur where:

> (1) there are exceptional circumstances why the issue was not raised in the trial court; (2) the new issue arises while the appeal is pending because of a change in the law; or (3) the issue presented is a pure question of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.

*Raich v. Gonzales,* 500 F.3d. 850, 868 (9th Cir. 2007)*.*

Zimbelman objects to the Housing Authority's use of a private right of action argument for the first time on appeal. Circuit Court rules limit this reply to 15 pages and addressing the complicated analysis of private right of action prejudices Zimbelman's other arguments. There has been no change in the law; and the Housing Authority had an opportunity to raise this issue at the district court hearing but failed to do so.

If this Court is inclined to allow the Housing Authority to raise the private right argument in this appeal, the argument must fail. To support its position, the Housing Authority cites two cases: *Cort v. Ash* and *Perry v. Housing Authority of Charleston*. (AB at 9). Both of these cases have been overruled by the United States Supreme Court in *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423 (1987) and are not persuasive authority.

In *Wright*, a group of tenants from low income housing projects sought to enforce the Brooke Amendment, codified at 42 U.S.C. § 1437a, which limited the amount a housing authority could charge a tenant as rent. *Id.,* 479 U.S. at 420 n.2. The Supreme Court ruled that tenants have a private right of action under the statute, as well as the federal regulations that defined rent. *Id.* at 431. The court ruled that the rent limitations were "a

mandatory limitation focusing on the individual family and its income. The intent to benefit tenants is undeniable." *Id.* at 430.

Zimbelman brings his action under 42 U.S.C. § 1437d, which provides that housing authorities cannot terminate tenants except for good cause and must provide tenants with a grievance procedure during a termination.   42 U.S.C. § 1437d(k)-(l).   Although Zimbelman's complaint against the Housing Authority falls under a different provision of § 1437 than that of the *Wright* plaintiffs, Zimbelman still has a private right of action against the Housing Authority for terminating him without cause.

 A plaintiff has a private right of action to enforce a federal law under 42 U.S.C. § 1983 if:

> 1) Congress intended the provision in question to benefit the plaintiff; 2) the plaintiff demonstrates that the right assertedly protected by statute is not so 'vague and amorphous' that its enforcement would strain judicial competence; and
> 3) the statute unambiguously imposes a binding obligation on the state.

*Blessing v. Freestone*, 520 U.S. 329, 340-341 (1997) (quoting *Wright v. Roanoke*, internal citations omitted). The first prong of the *Blessing* test was later modified by the Supreme Court in *Gonzaga Univ. v. Doe,* requiring that if Congress intends to confer a right on a class of beneficiaries, it must do so unambiguously through "explicit right-or-duty-

creating language" that is "phrased in terms of the person benefited." 536 U.S. 273, 283-284 (2002).

In this case, 42 U.S.C. § 1437d(k) states that housing authorities shall establish a grievance procedure where tenants will "be advised" of the grounds for terminations, "have an opportunity" for a hearing, "have an opportunity" to examine documents related to the termination, "be entitled" to representation at the termination hearing, "be entitled" to examine witnesses, and "be entitled" to a written decision. 42 U.S.C. § 1437d(k). 42 U.S.C. § 1437d(l) states that a housing authority "may not terminate a tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause." This language explicitly delineates a series of rights for tenants—notice, hearings, no terminations without cause—that are phrased as safeguards for the tenant. These provisions are specific in that they detail actual procedures rather than broad principles. The language is binding on the housing authority because it uses the words "shall" (42 U.S.C. § 1437d(k)) and "may not" (42 U.S.C. § 1437d(l)(5)). Thus, the language in 42 U.S.C. § 1437d(k) and (l) meets the *Blessing* test as modified by *Gonzaga*, and provides Zimbelman with a private right of action.

5

This court and many other jurisdictions recognize the private right of action that § 1437d(k), and regulations adopted by HUD pursuant to the statute, confers. *See Saxton v. Housing Auth. of Tacoma,* 1 F.3d 881, 885 (9th Cir. 1993) (tenant challenged Housing Authority's failure to provide a grievance hearing);  *Farley v. Philadelphia Housing Authority*, 102 F.3d 697, 702 (3d. Cir. 1996) ("Farley, as a public housing tenant, is an intended beneficiary of the procedure outlined in § 1437d(k) and its accompanying HUD regulations.");  *Stevenson v. Willis,* 579 F.Supp. 2d 913, 922-23 (N.D. Ohio 2008) ("[s]everal recent cases have squarely addressed the issue and found the provision of the Housing Act in question create enforceable rights under § 1983.");  *Samuels v. District of Columbia*, 770 F.2d 184 (D.C. Cir. 1985). Therefore, even if the Housing Authority is allowed to proffer a private right of action argument for the first time on appeal, this argument must fail because the intent of § 1437d to benefit tenants such as Zimbelman is undeniable.

**B.    The Housing Authority Relies On 42 U.S.C. § 13662, And Thus Case Law Regarding Terminations Under This Statute And Any Regulations Implementing 42 U.S.C. §13362 Are Relevant To Zimbelman's Case.**

A multitude of jurisdictions have found that a housing authority does not have a legal basis to terminate a participant in the public housing

6

program based on the tenant's registrant status.  The Housing Authority claims that these cases are distinguishable from its position because it "did not rely on either 42 USC § 13662 or 24 CFR § 982.553 to support the termination" of Zimbelman's lease agreement.  (AB at 15).  The Housing Authority instead suggests that it relied on its lease and "policy[1]" as justification for terminating Zimbelman's tenancy.

Despite the fact that some of the case law on lifetime registrants in federally subsidized housing involves other federally subsidized programs, all of the cases Zimbelman cited in his opening brief are unified in holding that a housing authority does not have the power to terminate a tenant based on admissions regulations.  In every case cited, the court found that while the applicable federal statutes and regulations permitted a housing authority to deny admission to sex offenders, there was no federal authority to terminate a tenant who had already been admitted to federally subsidized housing, based on his status as a lifetime registrant.  *Miller v. McCormick*, 605 F. Supp. 2d at 312 (D. Me. 2009); *Perkins-Bey v. Hous. Auth.*, 2011 U.S. Dist. LEXIS 25438, 8 (E.D. Mo. Mar. 14, 2011); *Matter of Bonseiro v New York City Dept. of Hous. Preserv. & Dev.*, 34 Misc. 3d

---

[1] The Housing Authority does not cite to or provide an explanation of this policy.

7

1226(A), 1226A (N.Y. Sup. Ct. 2012); *Hous. Auth. of Hartford v. Ali Kenyatta Bros.*, No. HDSP-165671 (Conn. Super. Ct. June 21, 2013).

   *Miller*, *Perkins-Bey*, and *Bonsiero* all involved tenants in the Housing Choice Voucher Program, known as Section 8 who were terminated under 24 C.F.R. § 982.553.  *Miller*, 605 Fed. Supp. at 297, *Perkins-Bey*, 2011 U.S. Dist. LEXIS 25438 at 2, *Bonsiero* 34 Misc. 3d 1226(A), 1226A. This provision, 24 C.F.R. § 982.553, is one of a trio of federal regulations that orders housing authorities and other federally subsidized housing owners to deny admission to registered sex offenders.  While 24 C.F.R. § 982.553 governs the Section 8 program, 24 C.F.R. § 960.204(a)(4) applies to tenants in conventional public housing, like Zimbelman. The third, 24 C.F.R. § 5.856, governs other federally subsidized housing programs.  All of these regulations were passed to implement 42 U.S.C. § 13663, which prohibits owners of federally subsidized housing from admitting lifetime registrants.  64 FR 40262.  42 U.S.C. § 13662 authorizes terminations for violent and drug-related crimes, but does not contain a provision authorizing termination based on a person's status as a registrant.  Any case involving 24 C.F.R. § 982.553, § 960.204(a)(4), or § 5.856 is indistinguishable because all three regulations are substantively the same and implement the same federal statute.  The Housing Authority's claim

that Zimbelman's case law is not relevant because it involves a different federal regulation is without merit. As neither 42 U.S.C. § 13662, nor § 13663 authorize the housing authority to terminate a tenant based on his registrant status, a termination under any regulation implementing those statutes is invalid.

Moreover, the Housing Authority also relies on 42 U.S.C. § 13662 and § 13663 as a justification for terminating Zimbelman's tenancy where it turns to HUD Notice PIH 2012-28.[2]  The Housing Authority claims that HUD Notice PIH 2012-28 is a clarification of 24 C.F.R. §966.4, and is thus an appropriate authority to justify Zimbelman's termination.  However, HUD Notice PIH 2012-28 never mentions 24 C.F.R. §966.4. Instead, HUD Notice PIH 2012-28 explicitly says on Page 2 under the heading "Statutory and Regulatory Clarifications" that it is a clarification of 24 C.F.R. § 5.856, §

_____

[2] Throughout its argument, the Housing Authority relies on various conflicting legal bases to terminate Zimbelman. At one point, the Housing Authority maintains that it only used its lease and policy to terminate Zimbelman's tenancy (AB, 14), but then also that it had the power to terminate under 24 C.F.R. §966.4 (AB, 11-12, 17), and that legal justification was found in HUD Notice PIH 2012-28.  As Zimbelman argued in his brief, the Housing Authority has no grounds to terminate his tenancy for discovery of inadmissibility after admission under 24 C.F.R. 966.4(l)(iii)(B), where Zimbelman disclosed his status on his application. Neither can the Housing Authority terminate Zimbelman for criminal activity under 24 C.F.R. 966.4(l)(iii)(A) because that applies only to criminal activity that occurs during a subsidy recipient's tenancy.  66 FR 28776, 28781.

960.204(a)(4), and § 982.553(a)(2). Those "clarified" regulations implement 42 U.S.C. §13662 and § 13663. Thus, to the extent the Housing Authority is relying on HUD Notice PIH 2012-28 to justify Zimbelman's termination, the Housing Authority is relying on 42 U.S.C. § 13662 and § 13663. Neither of those statutes provides authorization to terminate Zimbelman based on his registrant status.

Housing Authorities may not terminate program participants for reasons outside the federal statute. In *Ellis v. Ritchie*, a Section 8 tenant brought a § 1983 action against Virginia Housing Development Authority (VHDA) because the housing authority acted outside the scope of the federal regulations to terminate her housing subsidy. 803 F.Supp. 1097, 1098 (E.D.Va. 1992). The court found for the tenant, because "VHDA's discretion to deny or terminate Section 8 assistance to a participant is defined and limited by federal regulations." *Id.* at 1101. In *Cain v. Allegheny Housing Authority*, the court ruled in favor of the tenant because, "the failure to obtain approval of a move is not an enumerated basis to terminate assistance. We agree with Tenant and the decisions of our sister courts that the [PHA] cannot expand the basis for terminating assistance." 986 A.2d 947, 951 (Pa. Commw. Ct. 2009). *Ellis* and *Cain* support case law on lifetime registrants in federally subsidized housing, because each case

10

holds that a housing authority cannot expand the bases for termination beyond what is expressly provided for in the federal regulations.

**C.    The Unclean Hands Doctrine Does Not Preclude Zimbelman From Claiming That The Housing Authority Waived Its Right to Terminate Him Under The Lease**.

The Housing Authority claims that the "unclean hands" doctrine waives any equitable defense that Zimbelman might use.  (AB at 17).  To support this argument, the Housing Authority posits that because Zimbelman knew he was a registrant when he initialed the lease agreement that contained paragraphs 3 and 23, he "read, understood and agreed" that the Housing Authority could terminate him based on his registrant status and this basis was not subject to waiver.  (AB at 17-18.)

The Nevada Supreme Court has recently restricted the application of the unclean hands doctrine to situations where

> the egregiousness of the party's misconduct constituting the party's unclean hands and the seriousness of the harm caused by the misconduct collectively weigh against allowing the party to obtain such a remedy.

*Las Vegas Fetish & Fantasy v. Ahern,* 182 P.3d 764, 765 (Nev. 2008). Generally, Nevada limits findings of unclean hands to cases where one party demonstrates intent to deceive or harm another party.    *See Hosp Banks v. Sunrise.*, 102 P.3d 52, 66 (Nev. 2004) (acts that are not intended

11

or designed to cause harm are not misconduct); *Las Vegas Fetish &*
*Fantasy*, 182 P.3d at 767 (bringing an unsupported breach of contract
claim did not justify an unclean hands defense).  Misstatements "standing
alone, absent an intent to deceive" do not amount to unclean
hands. *Locken v. Locken*, 650 P.2d 803, 805 (Nev. 1982) quoting *Xerox*
*Corp. v. Dennison Mfg. Co., 322 F.Supp. 963, 968 (S.D.N.Y. 1971)*. In
*Evans v. Dean Witter Reynolds, Inc.*, stockbrokers who intentionally stole
money and securities from an elderly client could not receive equitable
remedy because they had unclean hands. 5 P.3d 1043, 1050- 1051 (Nev.
2000).  There is no evidence Zimbelman acted with any intent to deceive or
harm the Housing Authority where he fully disclosed his registrant status
and conviction on his application for subsidized housing.   (EOR, 78.)
Thus, Zimbelman's decision to sign the lease despite the fact that he was a
registrant does not rise to the level of egregiousness required for a finding
of unclean hands.

Zimbelman also allegedly violated paragraphs 3 and 23 of the lease
when he signed the lease with the Housing Authority, knowing that he was
a registrant.  With regard to a real property lease, the general rule is that
courts will deny equitable relief "if the complainant has violated the same
restrictive covenant he seeks to enforce against a defendant."  *Tracy v.*

*Capozzi,* 642 P.2d 591, 593 (Nev. 1982). Strictly applied, this would mean that the Housing Authority cannot seek equitable relief against Zimbelman based on the shared violation of the covenants contained in paragraphs 3 and 23. Equitable relief does not require that those seeking it "shall have led blameless lives," *Loughran v. Loughran, 292 U.S. 216, 229* (1934), but instead that they "shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814-15 (1945).

Zimbelman was forthcoming regarding his registration status at all times during his application process. Zimbelman's actions in becoming a public housing tenant do not show deceit, or unclean hands, and he is not precluded from arguing that the Housing Authority waived its right to terminate him under the lease. This court should grant the equitable relief Zimbelman requests.

**D.    The Housing Authority's Claim That Zimbelman Will Not Suffer Irreparable Harm If Evicted Is Not Supported By The Facts Of The Case.**

The Housing Authority claims that Zimbelman "can afford the market rate for housing in" Las Vegas. (AB at 19). As Zimbelman allegedly can afford a residence, the Housing Authority maintains that losing his housing subsidy will not render Zimbelman homeless and he will not suffer

irreparable harm.  *Id.*  Zimbelman's monthly income is $754, which means that if he paid the $675 fair market rent for an efficiency apartment in Las Vegas, he would be spending 85% of his income for housing, and have $79 to spend on food, transportation, utilities, medication, and other items for the rest of the month.  The idea that Zimbelman can live off of $2.63 per day is unrealistic.  Without stable subsidized housing, it is likely that Zimbelman will not be able to afford a residence and will become homeless.  Moreover, Zimbelman is an elderly man in deteriorating health, and finding a new residence will be physically difficult. The Housing Authority's claims fail to rebut Zimbelman's irreparable harm argument.

**E.    The Balance Of Equities Is In  Zimbelman's Favor Where The Housing Authority Can Point To No Evidence That It Will Suffer Harm If Zimbelman's Injunction Is Granted.**

The Housing Authority provides no citations, or supporting evidence for its argument that if it is not allowed to evict Zimbelman, HUD will reduce SNRHA's funding.   (AB, 20).  In the sixteen years since Congress passed QHWRA in 1998, there is no record of a housing authority being sanctioned for admitting sex offenders.   Moreover, at least four specific housing authorities in *Miller*, *Perkins-Bey*, *Bonsiero* and *Ali-Kenyetta Bros.*, had to keep a registrant as a tenant after losing a court case.   The Housing Authority has not provided any evidence that any of those housing

authorities were sanctioned after losing the court case. All four housing authorities appear to be fully functioning entities at this time.[3] Therefore, the continued funding of other housing authorities in the same position weighs against this Housing Authority's argument that its funding will be cut off if Zimbelman's motion is granted. (AB, 20). A balance of equities argument should not be based on mere speculation by the Housing Authority. Instead, this court should consider the possibility of homelessness that Zimbelman faces, a public interest interest in complying with federal law, and the fact that continuing rent payments for Zimbelman is in keeping with the status quo for the Housing Authority. The balance of equities in this case tips sharply in favor of Zimbelman.

## CONCLUSION

For these reasons, the District Court's decision to deny Zimbelman's Motion for Preliminary Injunction should be overturned.

---

[3] http://www.mainehousing.org/, http://www.haslc.com/, http://www.hartfordhousing.org/, http://www.nyc.gov/html/hpd/html/home/home.shtml/.

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Fed. R. App. P. 32(a)(7)(c) and Circuit Rule 32-1, the Reply Brief is proportionally spaced, has a typeface of 14 points in Arial style type and contains 3,287 words, exclusive of those matters that may be omitted under Rule 32(a)(7)(B)(iii).

NEVADA LEGAL SERVICES, INC.

By:    _/s/ I.K. Bergstrom_____
        I. KRISTINE BERGSTROM
        Nevada Bar No.10841
        530 South 6th Street
        Las Vegas, Nevada 89101
        (702)386-0404
        Fax (702) 388-1641
        Attorneys for Plaintiff

## **PROOF OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Circuit Court for the Ninth Circuit by using the appellate CM/ECF system on February 13, 2014.  Participants who are registered CM/ECF users will be served by the appellate CM/ECF system.

NEVADA LEGAL SERVICES, INC.

By:    _/s/ I.K. Bergstrom_____
        I. KRISTINE BERGSTROM
        Nevada Bar No.10841
        530 South 6th Street
        Las Vegas, Nevada 89101
        (702)386-0404
        Fax (702) 388-1641
        Attorneys for Plaintiff

16

17